**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| LILLIE GATES-LACY, | ) | CASE NO.1:09CV2593 |
|  | ) |  |
| Plaintiff, | ) | JUDGE SARA LIOI |
|  | ) |  |
| vs. | ) |  |
|  | ) | MEMORANDUM OF OPINION |
| CITY OF CLEVELAND | ) |  |
| DEPARTMENT OF PUBLIC SAFETY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Before the Court is a motion for summary judgment (Doc. 26) filed by defendant City of Cleveland ("defendant" or the "City") on all claims asserted against it by plaintiff Lillie Gates-Lacy ("plaintiff" or "Gates-Lacy") in her age and racial employment discrimination suit (Doc. 1). Gates-Lacy has responded in opposition to the City's summary judgment motion (Doc. 28), to which the City has replied (Doc. 29). This matter is ripe for disposition. For the reasons that follow, the City's motion is **GRANTED** and this case is **DISMISSED**.

**I.  BACKGROUND**

The basic facts of this matter are straightforward. Gates-Lacy is a 54 year-old African-American female who began working as a budget analyst for the City in 1989. (Compl. ¶¶ 7-9, 25.) Professionally, she has an undergraduate degree in accounting and a master's degree in financial planning. (Gates-Lacy Dep. at 33.) In March 2007, Gates-Lacy was working for the City as a managerial budget analyst at the Cleveland House of Correction when she was involved in an

1

automobile accident that required her to be on leave from her job for several months. (Id. at 8-9.) During her medical leave, the City transferred Gates-Lacy from the House of Correction to the Department of Public Safety's central administration office. (Compl. ¶ 10; Gates-Lacy Dep. at 13-16.) Gates-Lacy returned from medical leave – and to her new position – in August 2007. (Gates-Lacy Dep. at 9, 18.)

While in her former position Gates-Lacy had been responsible for payroll and accounting for "every item that was spent" by the House of Correction, in her new position at the central office Gates-Lacy's duties included administrative tasks, such as answering the phone. (Id. at 10, 17.) Gates-Lacy perceived this to be a demotion, but the City maintains that this change in duty assignment was due to the resignation of an employee at the central office, and that Gates-Lacy shared the job responsibilities of the departed employee with other members of the central administrative office. (Compl. ¶¶ 10, 25.)

There is no dispute that after the transfer Gates-Lacy retained her position as a "budget analyst" with no reduction in pay. However, the new position did not offer overtime opportunities. (Gates-Lacy Dep. at 10, 16.) Gates-Lacy asserts that the subsequent loss of overtime opportunities was "significant" because she had previously averaged 20 hours of overtime every two weeks when she worked at the House of Corrections. (*Id*. at 16.)

In September 2008, Gates-Lacy requested that the City temporarily alter her working hours so that she could both arrive at and depart from work earlier than normal. (*Id*. at 41-42.) Although specific accounts differ, the parties agree that a meeting between Gates-Lacy and the City occurred, and the City denied her request for flextime. (*Id*. at 41-43.) It is undisputed that later that month the city suspended Gates-Lacy for one day without pay after it was determined at

2

a pre-disciplinary hearing that she violated civil service rules and City discipline policy at the meeting regarding her flextime request. (*Id*. at 45-46) The City alleges that during the flextime meeting, Gates-Lacy raised her voice, stood up and walked out within view of her co-workers and other City employees. (Doc. 26 at 3.) Gates-Lacy maintains, however, that the disciplinary charges were "inexplicable." (Doc. 28 at 5.)

Gates-Lacy subsequently filed an administrative action with the Ohio Civil Rights Commission ("OCRC") on October 28, 2008. (Doc. 1-3.) The U.S. Equal Employment Opportunity Commission ultimately closed the file on Gates-Lacy's charge in August 2009 by issuing a "right to sue" letter. (Doc. 1-4.) The present action was filed in this Court on November 5, 2009, alleging that the City discriminated against Gates-lacy on the basis of race and age in violation of federal and state civil rights law. (Doc. 1.)

The City filed the instant motion for summary judgment, arguing that plaintiff cannot establish a *prima facie* case of employment discrimination pursuant to the four-part burden shifting test formulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that well-known test, a plaintiff must first establish a *prima facie* case of employment discrimination by making four showings: (1) that she was a member of a protected class; (2) that she was qualified for her job; (3) that she suffered an adverse employment decision; and (4) that she was treated differently than other similarly situated non-protected employees. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Only if the plaintiff has met this initial burden, does the burden of production shift to the defendant to articulate some legitimate, non-discriminatory reason for the adverse employment action.

3

For the purposes of this motion, the City concedes that Gates-Lacy is a member of a protected class and that she is qualified for her job. (Doc. 26 at 6.) The City argues, however, that plaintiff cannot establish the last two elements of the *McDonnell Douglas* test, namely that she suffered an adverse employment decision and that the City treated her differently than other similarly situated non-protected employees. (*Id*. at 7-13.) Moreover, the City argues it had legitimate, non-discriminatory reasons for the employment actions taken in this case, and plaintiff will be unable to disprove its reasons or show its reasons were pretextual. (*Id*. at 13-14; Doc. 29 at 9-10.)

As stated in her brief in opposition to the City's motion, Gates-Lacy essentially agrees that this matter is to be considered pursuant to *McDonnell Douglas*. (Doc. 28 at 7, n.1.) She further agrees that the "crux of the dispute" raised by the motion for summary judgment "is whether any or all of [the following] actions [...] were materially adverse:" (1) "demot[ing] [her] to a position in which she was no longer eligible for overtime compensation;" (2) "assign[ing] [her] to perform administrative or secretarial duties, which she was not required to perform in her prior position;" and (3) giving her "a one-day suspension from work." (*Id*. at 7-8.) However, unlike the City, plaintiff contends that the questions involved with these three actions present issues of material fact for a jury, not questions of law for summary judgment. (*Id*. at 8-13.) Moreover, Gates-Lacy argues there are genuine issues of material fact as to whether the City treated her differently than other similarly situated employees.[1] (*Id*. at 13.)

---

[1] In particular, she maintains that the City afforded another employee facing disciplinary suspension a greater opportunity to defend himself against the charges than it afforded her. (Doc. 28 at 13-14.) She further contends that another employee facing discipline was permitted to "work[] within her job classification" rather than, as with Gates-Lacy, being "required after her demotion to perform [...] tasks [] which were not commensurate with her prior position or her education and skill level." (*Id*. at 15.)

4

I.   **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970); *White v. Turfway Park Racing Ass'n.,* 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court must decide, "[W]hether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. The non-moving party is under an affirmative duty to point out facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary

judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## II.     DISCUSSION

In cases raising federal and state claims of racial and age discrimination under Title VII, 42 U.S.C. § 2000e *et seq*., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq*., and Ohio Rev. Code § 4112, a similar standard of review will apply in adjudicating a motion for summary judgment where the plaintiff was not discharged. *Minadeo v. ICI Paints,* 398 F.3d 751, 763 (6th Cir. 2005) (citations omitted) (age discrimination); *Pittman v. Cuyahoga Valley Career Ctr.,* 451 F. Supp. 2d 905, 930 (N.D. Ohio 2006) (citations omitted) (race discrimination). In particular, to make out a prima facie case (and thus avoid summary judgment), the plaintiff must first demonstrate that: (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) she was treated differently than similarly situated employees, not members of the protected class. *McDonnell Douglas Corp.,* 411 U.S. at 792; *Wright v. Murray Guard Inc.,* 455 F.3d 702, 707 (6th Cir. 2007) (citation omitted).

Once a *prima facie* case has been made, plaintiff is entitled to a presumption that defendant discriminated against her, and defendant must then attempt to overcome that presumption by putting forth a legitimate, non-discriminatory reason for the complained-of treatment. *Wright*, 455 F.3d at 706-07. As the Supreme Court has emphasized, such a legitimate reason put forth by the defendant must be legally sufficient to justify a verdict in its favor. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). If defendant successfully overcomes the presumption of discrimination, then plaintiff must show that defendant's stated reason was a

6

pretext for discrimination. *Id*. at 253. Throughout this burden-shifting approach, plaintiff continues to bear the burden of proving, by a preponderance of the evidence, that the adverse employment action was the result of unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

As noted above, the parties agree that the Court should evaluate all of plaintiff's claims under the *McDonnell Douglas* burden-shifting analysis, and that the dispute centers on whether Gates-Lacy can establish two elements of a *prima facie* case – materially adverse employment actions and different treatment from other similarly situated employees. (Doc. 26 at 6-7; Doc. 28 at 7 fn.1.)

### A. Materially Adverse Employment Actions

To establish an adverse employment action plaintiff must identify a materially adverse change with respect to the terms and conditions of her employment. *Kocsis v. Multi-Care Mgmt. Inc*., 97 F.3d 876, 885 (6th Cir. 1996). To determine whether an employment action is materially adverse, the Court must consider five factors: (1) significant change in responsibility; (2) decreased salary; (3) less distinguished title; (4) material loss in benefits; and (5) other indices that might be unique to a particular situation. *Id.* at 885-86; *Lentz v. City of Cleveland*, 410 F. Supp. 2d 673, 685 (N.D. Ohio 2006) (citing *Kocsis*).

Gates-Lacy contends that issues of material fact exist as to whether two actions taken by the City constitute adverse employment actions, which would entitle her to relief. Specifically, she contends that; (1) her re-assignment from a job at the House of Corrections to a position at City Hall was effectively a demotion because the new job was "a less professional position, requiring more ministerial tasks" and also did not allow her to earn overtime as before;

7

and (2) the one-day suspension she received impacted her future ability to obtain promotions and pay raises.(Doc. 28 at 10-12.) The Court will address these actions in sequence.

### 1. Reassignment

Defendant contends that plaintiff cannot establish that its reassignment of her was a materially adverse change with respect to the terms and conditions of her employment. *Kocsis*, 97 F.3d at 885. In the event of a job reassignment, the Supreme Court has stated that reassignment of duties is not automatically actionable as an adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006). Rather, the Court concluded that whether a reassignment is materially adverse depends on the circumstances of the particular case as judged from the perspective of a reasonable person in the plaintiff's position. *Id.* at 71 (citation omitted).

The Sixth Circuit has held that reassignment is only actionable as an adverse job action where it is "more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Kocsis*, 97 F.3d at 886 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). The Sixth Circuit is clear that "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions." *Id.* at 885 (citation omitted). The Sixth Circuit has held, however, that a reassignment not involving any diminution of pay or work hours may be an adverse employment action if the conditions of even a lateral transfer would nevertheless be "objectively intolerable to a reasonable person, thereby amounting to a 'constructive discharge.'" *Strouss v. Mich. Dept. of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)(citation omitted); *see also, Keeton v. Flying J, Inc.,* 429 F.3d 259, 265 (6th Cir. 2005) (rehearing and rehearing en banc denied 2006) (holding that although "much of our case law focuses on transfers in the context of the plaintiff's effort to demonstrate a constructive discharge,

we have not precluded the possibility that a transfer not rising to the level of a constructive discharge might nonetheless constitute a tangible employment action" under the category of "other indices that might be unique to a particular situation.") "An employee's subjective impressions as to the desirability of one position over another[,] [however] [,] are not relevant." *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).

Gates-Lacy has not specified here whether her transfer claim arises in the more usual context of a constructive discharge or under the "possible" context of unique indices to her particular situation. Her brief in opposition to summary judgment, however, suggests that her argument rests on the transfer claim arising under the less-litigated "unique indices" test. (Doc. 28 at 8 (citing *Kocsis*, 97 F.3d at 886).) In the absence of clear specificity, the Court will analyze the claim first as a constructive discharge claim, and then as one under the "unique indices" standard.

To establish constructive discharge, plaintiff must prove that defendant: (1) "deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) did so with the intention of forcing the employee to quit." *Logan v. Denny's Inc*., 259 F.3d 558, 568-69 (6th Cir. 2001)(citations omitted).To determine if there has been a constructive discharge, then, "both the employer's intent and the employee's objective feelings must be examined." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999) (citation omitted). In the end, the Court must make the determination, as a matter of law, that a constructive discharge has occurred by finding that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have been compelled to resign." *Smith v. Henderson,* 376 F.3d 529, 533-34 (6th Cir. 2004) (citing *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)).

In *Logan*, the Sixth Circuit identified some relevant factors the Court should consider in making a constructive discharge determination, specifically: (1) demotion; (2) salary reduction; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment or humiliation by the employer calculated to encourage the employee to resign; or (7) offers of early retirement or continued employment on less favorable terms. *Logan*, 259 F.3d at 569 (citation omitted).

Here, as noted, Gates-Lacy's assertion that her reassignment was an adverse employment decision has two distinct elements: (1) the loss of opportunity for overtime pay, and (2) the "constructive discharge" of being given a new assignment less important, less responsible and/or less prestigious than her prior job.

As to the loss of overtime opportunity, the Court notes first that the weight of persuasive authority in the Sixth Circuit and in this District supports the position that a lost opportunity for overtime, if properly supported in the record, can constitute an adverse employment action.[2] Here, Gates-Lacy testified that her reassignment to City Hall meant that she was no longer eligible for overtime as she had been when assigned to the House of Corrections. (Gates-Lacy Dep. at 10.) She further testified that the overtime pay she received while working at

---

[2]*Broska v. Henderson*, 70 F. App'x 262, 267-68 (6th Cir. 2003); *Franko v. City of Cleveland*, 654 F. Supp. 2d 711, 719 (N.D. Ohio 2009); *Lentz*, 410 F. Supp. at 685; *Jakimczuk v. DaimlerChrysler Corp.*, No. 3:04-CV-7313, 2006 WL 1624549 at * 2 (N.D. Ohio Jan. 9, 2006). *But see*, *Lentz v. City of Cleveland*, 333 F. App'x 42, 58 (6th Cir. 2009) (citing *Smith v. County of Hamilton*, 34 F. App'x 450, 456 (6th Cir. 2002)). The view that loss of overtime can constitute an adverse employment decision is further supported by analogy to other Sixth Circuit cases holding that denial of eligibility for a bonus constituted an adverse employment action (*Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 912 (6th Cir. 2009) (citations omitted)), and that denial of the ability to earn added pay when temporarily acting in a supervisory capacity is also an adverse employment decision. *Jordan v. City of Cleveland*, 464 F.3d 584, 596 (6th Cir. 2006) (holding when firefighter temporarily "acts" as a lieutenant during a shift but is denied "acting pay" for that temporary duty, "[t]hat denial of money would more than amply qualify as a materially adverse action to any reasonable employee for Title VII purposes.") (citation omitted).

the House of Corrections averaged 20 hours of overtime every two weeks. (*Id*.) As such, she has presented facts, which when analyzed in a light most favorable to her, establish that the overtime opportunities lost due to the reassignment were both relatively regular in their occurrence and significant in the monetary impact. On such a record, a reasonable juror could conclude that a reasonable employee in the position of Gates-Lacy would objectively consider the lost overtime opportunity after reassignment an adverse employment action. *See, Lee v. City of Columbus,* 636 F.3d 245, 259 (6th Cir. 2011) (citation omitted) (holding that at the summary judgment stage, plaintiff's burden is to present evidence from which a reasonable jury could conclude that plaintiff suffered an adverse employment action).

As to plaintiff's allegation of diminished duties and/or responsibilities, two of the *Logan* factors appear to be potentially applicable to Gates-Lacy – reduction in job responsibilities and reassignment to menial or degrading work. *Logan*, 259 F.3d at 569 (citation omitted). Gates-Lacy, in her brief citing *Kocsis*, argues that the position she held after reassignment was "a less professional position, requiring more ministerial tasks" than her prior position, and was functionally a demotion since the job duties on reassignment "were secretarial tasks typically performed by Union workers." (Compl. ¶ 10; Doc. 28 at 10.)

The City argues that Gates-Lacy's reassigned duties could not be perceived as objectively intolerable. It argues first that a reasonable person would view the change in physical work environment—from a round-the-clock jail setting in the "'old workhouse'" to an eight-hour day near the mayor's office in City Hall—"as a beneficial employment action rather than adverse." (Doc. 26 at 8-9.) Further, while conceding that the new position involved "occasionally performing 'union members' duties' [such as] answering the phone, providing relief for the receptionist,

11

occasionally typing, and maintaining a database," the City maintains that such tasks were within the scope of Gates-Lacy's job description, which requires a budget analyst to "'perform[] other job-related duties as required for the City.'" (*Id*. at 9.) The City contends that, since a supervisor may define what is a "job-related duty," it is not objectively reasonable to conclude that having Gates-Lacy occasionally perform office duties normally performed by union employees is a constructive discharge or otherwise a materially adverse employment action. (*Id*.)

Applying the two *Logan* factors for a constructive discharge as urged by Gates-Lacey, there is little doubt that the record establishes initially that the job transfer at issue involved diminished responsibilities. Gates-Lacy's testimony, which is not refuted, shows that in her position at the House of Corrections she prepared monthly financial reports and payroll and was otherwise responsible for accounting for "any type of moneys that were spent" at that facility. (Gates-Lacy Dep. at 10.) While in her new position at the department of public safety's central administrative office, her duties included answering the counter and the telephone, relieving the receptionist, maintaining a secretarial database and typing commissions. (*Id*. at 7.) Although the City emphasizes that the new position was a lateral transfer with no loss of title or pay, and to arguably a nicer physical location, it does not contest the evidence that the new position involved substantially less responsibilities than those Gates-Lacy had at her previous job. In particular, the evidence shows that Gates-Lacy went from processing payroll and accounting for all expenses at the House of Corrections to performing transactions at the entrance counter, answering the phone and typing up commissions while at City Hall. Objectively, this is evidence of a significant diminution of her job responsibilities.

Accordingly, contrary to the City's argument that this change in job duties could only *subjectively* be deemed a demotion, the Court finds that there is enough evidence in this record from which a reasonable juror could conclude that the reassignment was *objectively* intolerable when viewed from the perspective of an average employee in the plaintiff's position.

Plaintiff must also prove, however, that the City deliberately reassigned her with the intent of forcing her to quit. *Logan*, 259 F.3d at 568-69; *Lindsey v. Whirlpool Corp.*, 259 F. App'x 758, 771-72 (6th Cir. 2002). Plaintiff has not put forward any evidence that could prove an illegal reason motivated defendant's decision. Instead, the Court finds there is substantial evidence from the City, uncontested by Gates-Lacy, that the reassignment was principally because her work duties at the House of Corrections were not in line with the duties performed by other budget analysts employed by the City, such that a transfer would place her on par with others in her classification. Specifically, the record shows that the written basis for the transfer was because Gates-Lacy was functioning more as a "payroll clerk" at the House of Corrections, and thus performing duties "not of a budget analyst." (Doc. 26-1 at 15.) This evidence demonstrates that the City's purpose for the transfer that diminished Gates-Lacy's duties and deprived her of overtime opportunities was not to force Gates-Lacy to quit. The uncontested evidence of the reason for the transfer, even if read most favorably to Gates-Lacy, precludes her from establishing a case for constructive discharge by removing any evidence of employer intent.

Moreover, even assuming that Gates-Lacy alleges her claim as an adverse action under the "unique indices" standard, that category does not seem applicable here. The "unique indices" language, constitutes "a type of catch-all meant to include employment decisions that, although not universally recognized as negative, would likely be viewed as negative in a particular

13

setting." *Keeton*, 429 F.3d at 270 (Gilman, J., dissenting). The allegation of diminished job responsibilities after a transfer is a common allegation in many such discrimination cases and by itself does not assert a claim of any action unique to Gates-Lacy's particular circumstance. Alternatively, Gates-Lacy's claim may rest on the relatively unique or non-standard circumstance that she has an advanced degree, thus making the change in duties more onerous than they would be to a lesser-educated person. In such case, while the claim may have a basis to be labeled unique, it is also inherently subjective, in that it rests on something unique to Gates-Lacy and her personal situation, and not something unique to the job or to the action taken. Only in the latter cases would the action potentially be an adverse employment action under any objective test.

In light of the foregoing, the Court finds that plaintiff has not shown that her reassignment by the City was an adverse employment action.

### 2. One-Day Suspension

Gates-Lacy contends that her one-day suspension, which is documented in her personnel file, is an adverse employment action because it will potentially affect her ability to seek promotions with the City. The City argues that the loss of a single day's pay is a *de minimis* employment action that is not materially adverse and, thus, not actionable.

"Discipline can constitute an adverse employment action if it is a 'materially adverse change in the terms and conditions of [plaintiff's] employment.'" *Rose v. Buckeye Telesystem, Inc.*, 181 F. Supp. 2d 772, 776-77 (N.D. Ohio 2001) (quoting *Hollins v. Atl. Co., Inc.*, 188 F.3d 652, 662 (6th Cir.1999)). "For example, discipline constitutes an adverse employment action when it involves suspension from work for several days or when the suspension is without pay." *Id.* (collecting cases). Discipline can also be an adverse employment action when it affects

14

an employee's opportunity for promotion or pay raises. *Id.* The Sixth Circuit has consistently held[, however,] that *de minimis* employment actions are not materially adverse and, thus, not actionable."*Bowman v. Shawnee State University*, 220 F.3d 456, 462 (6th Cir. 2000) (citing cases); *Rose*, 181 F. Supp. 2d at 777 (holding one-day suspension with pay did not constitute adverse employment action where plaintiff had not established that discipline materially affected her employment); *Jones v. Ohio State Univ.*, No. 2:05-cv-137, 2007 WL 1574115, at * 9 (S.D. Ohio May 29, 2007) (holding one-day unpaid suspension not an adverse employment action).

The Court finds that the evidence in the record is insufficient to raise a genuine issue of material fact. "It is well settled that '[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of [ ] discrimination.'" *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006) (citation omitted). Plaintiff offers only "mere personal beliefs, conjecture and speculation" to support her claim that the one-day suspension establishes the adverse employment action element of her *prima facie* case for employment discrimination. Plaintiff has not established that her suspension actually has materially affected her employment. Nor has she demonstrated that her suspension has affected future terms of her employment such as salary or her opportunity for promotion. In short, plaintiff has not demonstrated that her suspension was more disruptive than a mere inconvenience.

   **B.**  **Different Treatment From Other Similarly Situated Employees**

The City argues that Gates-Lacy has failed to point to any evidence that the City treated her differently than any similarly situated employee. Specifically, the City asserts that Gates-Lacy has failed to demonstrate that her proposed comparables, Ross Steinberg and Holly Diehl, are similarly situated in all relevant respects. The Court agrees.

15

To be similarly situated, plaintiff and the employees with whom she seeks to compare herself must be similar in "all of the *relevant* aspects[.]" *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co..,* 40 F.3d 796, 802 (6th Cir. 1994) (italics in original)). There is no requirement, however, that the comparable employees be identical to the plaintiff or that there be an exact correlation between all aspects. *See, Jackson v. FedEx Corporate Services, Inc.*, 518 F.3d 388, 396 (6th Cir. 2008). Within the disciplinary context, the comparable employees "'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Jackson v. Int'l Fiber Corp.*, 395 F. App'x 275, 280-81 (6th Cir. 2010) (quoting *Ercegovich,* 154 F.3d at 352).

Gates-Lacy relies on evidence that the City granted greater procedural protections during the disciplinary process to a younger, male employee, Ross Steinberg. (Gates-Lacy Dep. at 30-31.) Even assuming that Steinberg is a non-protected employee, however, plaintiff has produced no evidence that she was similarly situated in all relevant respects to him. There is no evidence that they shared the same supervisor or engaged in the same conduct without differentiating or mitigating circumstances. The record shows that plaintiff was charged with insubordination for her alleged conduct during the meeting concerning her request to change her working hours and received a one-day unpaid suspension, whereas Steinberg was subject to discipline for lying on his application for employment, which according to Gates-Lacy's testimony, is a "fireable offense." (*Id.*)

16

Gates-Lacy also points to evidence that Holly Diehl, a receptionist in the central administration office, was assigned work within her job classification, whereas Gates-Lacy was required to perform tasks not commensurate with her prior position or her education and skill level. (Doc. 28 at 15.) Plaintiff has presented no evidence, however, that Diehl was a non-protected employee, much less that Diehl was similarly situated to Gates-Lacy in any relevant way. There is no evidence that they held comparable positions or that they had similar backgrounds in terms of education or skill.

Even weighing the evidence in a light most favorable to Gates-Lacy, the Court finds that she has failed to establish that there were non-protected employees who engaged in the same or similar conduct such that the Court could analyze the treatment of those employees against the treatment of Gates-Lacy for purposes of a race or age discrimination claim. *See, Pittman v. Cuyahoga Valley Career Ctr.*, 451 F. Supp. 2d 905, 918-19 (N.D. Ohio 2006) (a plaintiff must point to specific facts in the record to establish evidence of acts of comparable seriousness and may not rely on vague allegations and subjective beliefs and claims). Accordingly, plaintiff has failed to satisfy the last element of the *McDonnell Douglas prima facie* case.

### C. The City's Legitimate, Non-Discriminatory Reasons for Employment Actions

Because the Court has found that plaintiff has failed to state a *prima facie* case of discrimination, it is not necessary for the Court to examine defendant's non-discriminatory reasons for the employment actions at issue. Even so, the non-disputed evidence of non-discriminatory reasons for the transfer and suspension would ultimately defeat any *prima facie* case of discrimination under the burden-shifting rubric of *McDonnell Douglas*.

17

As stated earlier, there is substantial evidence from the City, uncontested by Gates-Lacy, that her reassignment was principally because her work duties at the House of Corrections were not in line with the duties performed by other budget analysts employed by the City. (Gates-Lacy Dep. at 10-16.) Moreover, there is evidence in the record that the City disciplined Gates-Lacy for violations of its work rules. (*Id*. at 39, 45-46.) The evidence thus establishes non-discriminatory reasons that overcome any *prima facie* case of discrimination arising from the reassignment and suspension of Gates-Lacy.[3]

If a defendant successfully overcomes the presumption of discrimination, then plaintiff must show that defendant's stated reason was a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Here, there is no basis in the record to support a finding that the City's proffered reasons are merely pretext for discrimination. Thus, even if the Court were to find that Gates-Lacey has established a *prima facie* case of discrimination, she has not satisfied her burden of countering defendant's evidence of legitimate, non-discriminatory reasons for the employment actions at issue here.

### III.    CONCLUSION

For the foregoing reasons, the City's motion for summary judgment is GRANTED and this case is DISMISSED.

**IT IS SO ORDERED**.

Dated: September 19, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3] Plaintiff objects that there are no affidavits or other admissible evidence to support defendant's non-discriminatory reasons. Defendant, however, has properly relied upon plaintiff's own deposition testimony and business records authenticated by plaintiff at her deposition.

18